525 So.2d 928 (1988)
Dorris Slater REDISH, Appellant,
v.
STATE of Florida, Appellee.
No. BR-370.
District Court of Appeal of Florida, First District.
May 4, 1988.
Leo A. Thomas of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen. and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
Redish appeals a judgment and sentence adjudicating him guilty and sentencing him to a total of two-and-a-half years' incarceration. We affirm all issues raised,[1] with the *929 exception of that pertaining to the issue of prosecutorial misconduct, which we agree requires reversal and remand of the case for new trial.
The appellant was accused by information in four counts: with racketeering in violation of the Racketeer Influenced and Corrupt Organization statute (RICO),[2] with charging usurious interest,[3] solicitation to commit grand theft,[4] and solicitation to make a false and fraudulent insurance claim.[5] The state's key witness, Joe Dunson, testified that the appellant had loaned him $6,000, with interest assessed at $1,500 every three months  the equivalent of 100 percent annual interest. After Dunson defaulted on his loan payments, he informed the police that the appellant had suggested that he burn down his house in order to obtain the insurance proceeds. Following up on this information, the police fitted Dunson with a listening device to wear during his next conversation with the appellant. During the course of the recorded conversation, later played before the jury, the appellant discussed at length how Dunson should carry out the suggested arson and warned him about the consequences of not paying the debt.
Contrary to Dunson's testimony, the appellant introduced into evidence loan papers reflecting a loan to Dunson of $7,500 with 12 percent annual interest, together with a mortgage on Dunson's home executed in favor of the appellant. The appellant contended that these papers were evidence of the true transaction between the parties, and that the other material contained in the recorded conversation was just "tough talk" made for the purpose of scaring Dunson into repaying the loan that was actually represented by the promissory note and mortgage. The jury rejected this argument and found the appellant guilty on all counts.
We address only the point on appeal relating to the remarks made by the prosecution during closing argument. The appellant contends that each of the following remarks constituted reversible error:
1. "Of course, Mr. Redish knowing that there was going to be a search of his house or a fifty/fifty chance of it, didn't leave any notes or loans around that show criminal usury "
2. "Now he's on the stand being tried for this, he's going to lie to you."
3. "Gentlemen, if you succumb to the defense argument, you would be in violation of your oath as jurors."
4. "Despite the attempt to bring religion, to bring race, to bring old age and every other irrelevant issue into this courtroom by the defense and their cheap tactics, I submit that you as jurors with good common sense won't fall for these tricks."
Following the above comments, the defense objected and approached the bench. Only the objection to the second comment was overruled; the trial court sustained objections to the remaining remarks and instructed the jury to disregard them.
We agree with the state that the first two comments do not constitute reversible error. From our examination of the evidence it appears that the first remark was made in response to the appellant's earlier testimony that he had removed his records from his residence when he went out of town. On cross-examination, the appellant admitted that at the time of his departure he had already been questioned by the police, and he suspected that there was a "fifty-fifty chance" that his home would be searched. Under these facts, the trial court's curative instruction to the jury to disregard the inference suggested by the state that appellant had removed incriminating evidence was sufficient to avoid a mistrial.
*930 The second comment, stating that the defendant had lied during his testimony, has been upheld as proper argument if the evidence supports such a conclusion. See Craig v. State, 510 So.2d 857, 865 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988), wherein the Florida Supreme Court observed:
When counsel refers to a witness or a defendant as being a "liar," and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration.
Here the prosecution introduced into evidence a taped conversation, disclosing that the appellant had told Dunson that he owed $1500 interest on the 90-day $6000 debt and warned him that he could lose his life if he did not pay. During direct examination, appellant denied the usurious interest rate and stated that he only wanted to "scare" Dunson into repaying the loan. Thus, the jury was clearly faced with two different versions of the events, and the prosecutor did not exceed the bounds of proper argument by suggesting that the defendant's testimony was fabricated.
We do agree, however, that the last two comments made by the state were improper and sufficiently prejudicial to constitute reversible error. The third remark, that the jury would be "in violation of your oath [sic] as jurors" if they "succumb[ed] to the defense argument," was, in our view, an impermissible attempt by the prosecution to instruct the jury as to its duties and functions. In United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the prosecution, in response to the defendant's closing argument, made the following comment:
I don't know whether you call it honor and integrity, I don't call it that, [defense counsel] does. If you feel you should acquit him for that it's your pleasure. I don't think you're doing your job as jurors in finding facts as opposed to the law that this Judge is going to instruct you, you think that's honor and integrity then stand up here in Oklahoma courtroom and say that's honor and integrity; I don't believe it.
470 U.S. at 5-6, 105 S.Ct. at 1041 (e.s.). Although the Supreme Court held that this comment did not constitute plain error,[6] the Court stated:
The prosecutor was also in error to try to exhort the jury to "do its job"; that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice... .
470 U.S. at 18, 105 S.Ct. at 1047-48. See also United States v. Mandelbaum, 803 F.2d 42, 44 (1st Cir.1986) ("There should be no suggestion that a jury has a duty to decide one way or the other; such an appeal is designed to stir passion and can only distract a jury from its actual duty: impartiality.").
In the case at bar, the error, unlike that in United States v. Young, was preserved by timely objection. The rule barring prosecutorial comment, which has the effect of invading the province of the jury by emphatically directing the jurors as to how the evidence should be viewed, has long been accepted by Florida courts. In Carlile v. State, 129 Fla. 860, 176 So. 862, 864 (1937), the Florida Supreme Court stated:
Ultimate deductions from the evidence are for the jury to draw. Counsel may *931 argue what deductions in his judgment the evidence would reasonably support, but under no circumstances is he warranted in offering dogmatic statements as to what the evidence proves.
Cf. Hopper v. State, 54 So.2d 165, 167 (Fla. 1951) ("It appears to be well settled that counsel has the right to comment on the sufficiency of the testimony or the legal insufficiency thereof, and the jury has the sole prerogative of settling the disputes and conflicts of the controversy under appropriate instructions.").
Lastly, we consider the prosecution's personal attack on defense counsel by referring to his "cheap tricks" to be clearly beyond the bounds of proper closing argument. In Briggs v. State, 455 So.2d 519, 521 (Fla. 1st DCA 1984), this court stated:
Verbal attacks on the personal integrity of opposing counsel, rather than appropriate comments on the credibility of witnesses and inferences to be drawn from the evidence before the jury, are wholly inconsistent with the prosecutor's role.
See also Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984), pet. for rev. denied, 462 So.2d 1108 (Fla. 1985) (resort to personal attacks on defense counsel is an improper tactic which can poison the minds of the jury); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982) (prosecution's personal attacks upon defense counsel were utterly and grossly improper).
The appellee argues that, regardless of the impropriety of the prosecution's remarks, there is overwhelming evidence against the appellant which warrants a finding of harmless error. Were only one of the above comments made by the prosecution, we might be inclined to agree. In light, however, of the prosecutor's repeated misconduct, we cannot say that the trial court's curative instructions were sufficient to dissipate the statements' prejudicial effect. This case is similar to Singletary v. State, 483 So.2d 8 (Fla. 2d DCA 1985), in which the combination of the admission of improper testimony concerning the defendant's probation, coupled with the prosecution's expression of personal beliefs during closing argument, was held to constitute reversible error:
The comments which are the subject of either of those grounds, viewed alone, might be argued to have constituted insufficient grounds for requiring a mistrial... . Nonetheless, we believe the two contentions, taken together, require a reversal. Each involved improper statements to the jury which created improper prejudice to defendant... . However probable in light of the evidence it may have been that defendant would have been convicted had the prosecutor not made the foregoing statements to the jury, we cannot say that in this case acquittal was not reasonably within the realm of possibility.
483 So.2d at 9 (e.s.). As in Singletary, we conclude that it cannot be said beyond a reasonable doubt that the appellant at bar would have been convicted without the taint of the impermissible remarks made to the jury. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
REVERSED and REMANDED for new trial.
SMITH, C.J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, dissenting.
With respect to the prosecutor's comment # 1 (quoted in the majority opinion in paragraph numbered one thereof), I would go further than the majority's holding that such comment was not reversible error and hold that the prosecutor's statement was fair comment under the circumstances.
The defendant argues that comment # 1 is tantamount to saying that the state had unpresented evidence of notes or loans showing criminal usury and is violative of such cases as Wilder v. State, 355 So.2d 188 (Fla. 1st DCA 1978). But that is not a fair characterization of what the prosecutor was commenting upon. Rather, he was urging an inference that there were no documents reflecting usurious notes or loans because the defendant may have disposed of them. This comment was proper because, according to the testimony, the defendant, after the police search of his *932 home but prior to his arrest, told Deputy Sanders that he fully expected (or at least "a 50-50 chance") that his home would be searched, and defendant testified that he took many of his loan records out of his home prior to the search to "work on them or something."
Therefore, instead of sustaining the defense objection and instructing the jury to disregard the prosecutor's argument, the trial court, in my view, should have overruled the objection.
I agree with the majority's conclusion that the prosecutor's comment # 2 was fair comment and that the trial court did not err in overruling the defendant's objection thereto.
The third comment objected to by the defense was the following statement which constituted the opening remarks by the prosecutor in the rebuttal stage of his summation:
"Gentlemen, if you succumb to the defense argument, you would be in violation of your oath as jurors."
At first blush, this comment appears improper based upon the authorities cited in the majority opinion. However, the record clearly shows that such comment was addressed to and precipitated by defense counsel's following remarks which were counsel's final words in the defense summation:
Yes, Slater ran his mouth that day and he ran it too much. He shouldn't have said all the things that he said. But I can guarantee you, Ladies and Gentlemen, he's paid for it. He and his family have more than paid for it. I'm just saying after sixty years, you know, everybody is entitled to a mistake and he's made his mistake and he's learned. I don't think there's any need to put him in jail or for any further punishment. Thank you, Ladies and Gentlemen.
It would seem grossly unfair to preclude the prosecutor, in response to the above defense argument, from reminding the jurors that they would not be true to their oaths as jurors if they were persuaded to acquit the defendant: (1) because the defendant and his family have already "paid for it"; (2) because of the defendant's age; (3) because "everybody is entitled to a mistake"; or (4) because defense counsel "[didn't] think there's any need to put him in jail or for any further punishment." To me, the authorities relied upon by the majority with respect to this comment are materially distinguishable.
Finally, turning to comment # 4, I agree with the majority that the prosecutor's remarks were improper as a personal attack on the integrity of opposing counsel. An attorney's suggestion to the jury of the resort to "cheap tactics" and "tricks" by opposing counsel is so obviously improper as to suggest a woeful lack of understanding of or appreciation for the most fundamental of rules governing the conduct of trial attorneys.
Having said that, I am not persuaded that comment # 4, by itself, entitled the defendant to a mistrial. Even the majority would apparently not reverse solely on the basis of comment # 4. I believe the trial court's curative instruction was sufficient to attenuate the prejudice which the defendant might have otherwise suffered, particularly in view of the overwhelming evidence of guilt.
I agree with the majority's affirmance of the remaining issues raised by the appellant.
I would therefore affirm on all issues.
NOTES
[1] Appellant also urges the lower court erred in allowing appellant's admission that he was involved in an arson of his own residence approximately 28 years before, in refusing to give a lesser included offense jury instruction on the appellant's racketeering charge, and in failing to grant the motion for judgment of acquittal. We conclude that none of these contentions are cause for reversal.
[2] Sections 895.01-895.06, Florida Statutes.
[3] Section 687.071(3), Florida Statutes.
[4] Sections 777.04 and 812.014, Florida Statutes.
[5] Sections 777.04 and 817.234, Florida Statutes.
[6] The prosecution's remarks were made in response to the defense's argument that the case against the defendant "has been presented unfairly" and that "the [prosecution's] statements have been made to poison your minds unfairly." Defense counsel further charged the prosecution with "reprehensible" conduct in purportedly attempting to cast a false light on the defendant's activities. 470 U.S. at 4, 105 S.Ct. at 1040-41. In light of these unobjected remarks by the defense, the Court held that the prosecution's comments were not plain error, as any potential harm was "mitigated by the jury's understanding that the prosecutor was countering defense counsel's repeated attacks on the prosecution's integrity." 470 U.S. at 17-18, 105 S.Ct. at 1047.